OPINION
{¶ 1} On March 14, 2005, Appellants, Gerald Stewart and Ridgley Allington, being represented by Attorney Terrence Baxter, timely filed this appeal from the judgment entered in the Coshocton County Court of Common Pleas, Juvenile Court Division, which terminated all their parental rights, privileges and responsibilities of the Appellants with regard to their minor child, Karen Stewart, and ordered that permanent custody of the minor child be granted to the Coshocton County Department of Job and Family Services (hereinafter JFS).
 {¶ 2} On April 27, 2005, counsel for Appellants filed a brief, pursuant to Anders v. California (1967), 388 U.S. 924. In the Anders brief, counsel for Appellants indicated that the appeal was wholly frivolous; advised the Court that he had notified the Appellants of their right to file their own pro se merit briefs; and requested that he be permitted to withdraw as counsel. Appellants have not filed merit briefs on their own behalf.
 {¶ 3} In the Anders brief, counsel asserts on Appellants' behalf the following proposed assignment of error: "THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 4} The relevant facts leading to this appeal are as follows:
 STATEMENT OF THE FACTS AND CASE {¶ 5} Appellants are the natural parents of Karen Stewart, whose date of birth is October 6, 1999. Ridgley Allington is the minor child's mother and Gerald Stewart is the minor child's father.
 {¶ 6} JFS first became involved with the minor child on November 3, 1999, as a result of an allegation that the child was inappropriately dressed and the parents had failed to follow through on medical appointments following the child's birth.
 {¶ 7} On December 17, 1999, JFS investigated a second referral after bruises were found on the child's buttocks and left thigh during a medical examination. The investigation revealed that the physical abuse was perpetrated by the father, who spanked the child when he became frustrated with her crying. As a result of the abuse, JFS requested and received emergency custody of the child. Thereafter, from December 17, 1999, through December 21, 1999, the child was placed in the home of a relative. On December 21, 1999, the child was placed in foster care. In an effort toward reunification, the parents were ordered to complete an extensive case plan, which included intensive individualized parenting training.
 {¶ 8} On December 21, 2000, the child was reunified with her family and placed under the protective supervision of JFS.
 {¶ 9} In July of 2001, JFS closed the child's case, due to parental compliance with the case plan.
 {¶ 10} On January 30, 2004, JFS received a third referral alleging that the child was not toilet trained. The JFS investigation revealed insufficient evidence to file a dependency, neglect or abuse complaint. However, due to prior concerns, JFS provided the parents with educational information concerning toilet training and parenting and suggested that the parents place the child in a Head Start Program. The parents refused any JFS services and the investigation was closed.
 {¶ 11} On July 23, 2004, JFS received their fourth referral involving the minor child, in which JFS responded to Coshocton County Memorial Hospital. At the hospital, JFS workers learned that the minor child had been severely burned in a house fire, as a result of the parents' actions. Local firefighters explained that when they arrived at the minor child's residence, they found the parents outside of the burning home. They were further informed that the child was still in the upstairs bedroom, chained to a crib. Upon entering the home, the firefighters found the child chained to a crib with two padlocks around her ankles. The firefighters had to cut the chains in order to remove the child from the burning house. The responding caseworker observed the child covered in soot, coming in and out of consciousness, with a chain and two padlocks wrapped around her ankles.
 {¶ 12} The child was life-flighted from Coshocton County Memorial Hospital to Columbus Children's Hospital, where she was admitted to the pediatric ICU and was listed in critical condition. On July 28, 2004, she was admitted to the burn unit. During her admittance, she was placed on a ventilator and was treated for second degree burns to her ears, face, and shoulder, as well as for smoke inhalation.
 {¶ 13} On August 2, 2004, the child was released from Columbus Children's Hospital and was immediately placed in foster care. Although she was almost five years of age at the time of her placement, she was not toilet trained; she suffered from speech delay; her social skills were not age appropriate; she had difficulty interacting with other children; and she had difficulty taking direction from adults. Within a week of her foster placement, she was toilet trained and, as a result of her enrollment in the Head Start program, she gradually learned to interact with others in a socially acceptable manner, using words, rather than actions, to express her feelings.
 {¶ 14} In October of 2004, the minor child began attending counseling on a bi-weekly basis with Dr. Laurel Smith. The child's counseling is primarily focused on decreasing the symptoms caused by Post Traumatic Stress Disorder ("PTSD"). The child's diagnosis of PTSD is associated with her experience of being in a fire with no means of escape, being chained to her bed for long periods of time, and her personal feelings of being at fault for her life situation. In order to avoid further trauma, Dr. Smith recommended that the child have no contact with her parents for a substantial length of time. According to Dr. Smith, lack of contact with her natural parents would provide the child with an opportunity to understand the trauma, which was inflicted upon her by her natural parents, and become familiar with appropriate nurturing behaviors in a normal and safe home environment.
 {¶ 15} On August 23, 2004, Appellants were each indicted for one count of Endangering Children, in violation of R.C.2919.22(B)(3), each a felony of the second degree. On December 15, 2004, after a joint trial to the court, both Appellants were found guilty as charged in the indictment.
 {¶ 16} On December 21, 2004, JFS filed a Motion for Permanent Custody. As grounds for the motion, SCDJFS stated that "the parents have been convicted of Child Endangering".
 {¶ 17} On January 20, 2005, both parents were sentenced. Gerald Stewart was sentenced to serve four (4) years of incarceration in a state penal institution with 117 days of jail-time credit. Ridgley Allington was sentenced to serve two (2) years of incarceration in a state penal institution with 117 days of jail-time credit.
 {¶ 18} On February 9, 2005, the trial court held evidentiary hearings with regard to the motion for permanent custody. At the time of the permanent custody hearing, both parents were incarcerated and serving their sentences for their Child Endangering convictions involving the minor child.
 {¶ 19} After the adjudicatory hearing, the trial court found that JFS had proven, by clear and convincing evidence, that the minor child was neglected and abused, as alleged in the five-count permanent custody complaint. Having made the adjudicatory finding, the court immediately heard evidence with regards to the dispositional phase of the permanent custody hearing.
 {¶ 20} On February 22, 2005, via judgment entry, the trial court granted permanent custody of Karen Stewart to the Coshocton County Department of Jobs and Family Services. In so holding, the trial court found, by clear and convincing evidence, that the child could not be placed with either parent within a reasonable time, or should not be placed with either parent, and that it was in the best interest of the child to grant permanent custody of the child to JFS.
 ASSIGNMENTS OF ERROR: {¶ 21} "The verdict is against the manifest weight of the evidence."
 {¶ 22} This Court is aware that a parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. Santosky v. Kramer (1982), 455 U.S. 745, 753,102 S.Ct. 1388, 71 L.Ed.2d 599; In re: Murray (1990),52 Ohio St.3d 155, 156, 556 N.E.2d 1169, 1171. However, the parent's rights, are not absolute. Rather, "it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed." In re: Cunningham (1979),59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (quoting In re: R.J.C.
(Fla.App. 1974), 300 So.2d 54, 58).
 {¶ 23} Ohio Revised Code Section 2151.414(B)(1), addresses under what circumstances a trial court may grant permanent custody. That statute provides as follows:
 {¶ 24} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 25} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 26} "(b) The child is abandoned.
 {¶ 27} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 28} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period ending on or after March 18, 1999."
 {¶ 29} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C.2151.414(D). These factors are as follows:
 {¶ 30} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 31} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 32} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period ending on or after March 18, 1999;
 {¶ 33} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and,
 {¶ 34} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 35} R.C. 2151.414(E) sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with either parent within a reasonable time. See R.C.2151.414(B)(1)(a). If the court finds, by clear and convincing evidence, the existence of any one of the following factors, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent":
 {¶ 36} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parent to remedy the problem that initially caused the child to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions that caused the child to be placed outside the child's home. In determining whether the parents have substantially remedied the conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. * * *
 {¶ 37} "(5) The parent is incarcerated for an offense committed against the child or a sibling of the child. * * *
 {¶ 38} "(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be able to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing. * * *
 {¶ 39} "(15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of reoccurrence of the abuse or neglect makes the child's placement with the child's parents a threat to the child's safety.
 {¶ 40} "(16) Any other factors the court considers relevant."
 {¶ 41} A trial court may base its decision that a child cannot or should not be placed with either parent within a reasonable time upon the existence of any one of the above factors. The existence of one factor alone will support a finding that the child cannot be placed with either parent within a reasonable time. See In re: William S. (1996),75 Ohio St.3d 95, 661 N.E.2d 738; In re: Hurlow (Sept. 21, 1998), Gallia App. No. 98 CA 6; In re: Butcher (Apr. 10, 1991), Athens App. No. 1470.
 {¶ 42} We note that clear and convincing evidence must exist to support a permanent custody award. The Ohio Supreme Court has defined "clear and convincing evidence" as follows: "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases. Crossv. Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118; In re:Adoption of Holcomb (1985), 18 Ohio St.3d 361, 481 N.E.2d 613. In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof."State v. Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54,60; See also, C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578. If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. Schiebel, 55 Ohio St.3d at 74.
 {¶ 43} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Id. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained inSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
 {¶ 44} "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis v. Flickinger (1997),77 Ohio St.3d 415, 419, 674 N.E.2d 1159; see, also, In re:Christian, Athens App. No. 04CA10, 2004-Ohio-3146; In re:C.W., Montgomery App. No. 20140, 2004-Ohio-2040.
 {¶ 45} In the case sub judice, at the time of the permanent custody hearing, both parents were incarcerated and were serving two and four year sentences for physically restraining their child cruelly, for excessive periods of time, in a manner which created a risk of serious physical harm to the child. Furthermore, as a result of the restraint, the child suffered the emotional anguish of being unable to escape from a burning residence and the physical pain of smoke inhalation and second degree burns.
 {¶ 46} The record shows that for over four years, JFS provided the Appellants with extensive parenting services. According to the caseworker, in that time period, the Appellants had exhausted any and all programs provided by JFS, which are designed to reunite families. Clearly, the history of referrals and most recent JFS involvement demonstrated that the Appellants failed to utilize JFS services to remedy the problems which led to the removal of the child. Therefore, Appellants' lengthy history of failure to remedy did not offer a positive prediction for a successful outcome within a reasonable period of time, but rather, displayed an increase in the likelihood of the reoccurrence of abuse and neglect making future placement with either parent a threat to the child's safety.
 {¶ 47} The JFS caseworkers further testified that the child is adoptable; that the child never asked to see her parents; that the interaction and interrelationship between the child and her foster family is very strong; that the foster relationship has significantly affected the child in a positive manner; and that the foster parents are interested in adopting the child. The caseworkers further testified that the child needs a legally secure permanent placement, which the Appellants are unable to provide within a reasonable period of time, and which can only be achieved with a grant of permanent custody to JFS. The caseworkers stated that any harm, if any, by permanently severing the bond between the child and Appellants was outweighed by the benefit of a permanent, safe, appropriate home. Caseworker Maloy specifically stated, "I believe this child has the right to freedom. She has the right to safety and stability." Lastly, we note that the guardian ad litem recommended that permanent custody be granted to JFS and that "she be placed and have the security and consistency and structure of a family home as soon as possible".
 {¶ 48} We find that the trial court's finding that the child could not be placed with the Appellants in the foreseeable future, and should not be placed with the Appellants, and, also, that the best interests of the child would be served by granting permanent custody to the Coshocton County Department of Job and Family Services was not against the manifest weight of the evidence.
 {¶ 49} We find the evidence to be substantial and credible that it is in the child's best interest to be provided with a safe and stable home environment, which can only be available through permanent custody.
 {¶ 50} Upon review, we find that the trial court had clear and convincing evidence before it to grant the Coshocton County Department of Job and Family Services permanent custody of the child.
 {¶ 51} Appellants' Proposed Assignment of error is overruled.
 {¶ 52} In conclusion, for the foregoing reasons, we find that the trial court's award of permanent custody to the Coshocton County Department of Job and Family Services was not against the manifest weight of the evidence.
 {¶ 53} We further grant Appellant counsel's motion to withdraw.
 {¶ 54} The judgment of the Coshocton County Court of Common Pleas, Juvenile Court Division, is affirmed.
Edwards, J., Gwin, PJ. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Coshocton County Court of Common Pleas, Juvenile Court Division, is affirmed.
Attorney Terrence Baxter's motion to withdraw as counsel for Appellants, Gerald Stewart and Ridgley Allington is hereby granted.